UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ADMIRAL METALS SERVICENTER CO. INC., <br> Plaintiff <br> v. <br><br> FEUZ MANUFACTURING, INC. <br> And <br> GARY A. FEUZ, INDIVIDUALLY <br> Defendants <br><br> And <br><br> GENERAL ELECTRIC COMPANY <br> And <br> EMPIRE RECYCLING OPERATIONS, INC. <br> Reach and Apply Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 04CV12204-JLT |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR INJUNCTION**

Now come the Plaintiff, Admiral Metals Servicenter Company, Inc. ("**Admiral**"), and submits this memorandum in support of Plaintiff's Motion For Injunction. In support of this motion, Admiral states that it previously obtained a temporary restraining order in Middlesex Superior Court prior to this matter being removed to this court. Moreover, Admiral has a reasonable likelihood of success on the merits of this case involving goods shipped and delivered on credit and Admiral will suffer irreparable injury if an injunction is not granted because the Defendant, Feuz Manufacturing, Inc. ("**Feuz**"), is likely to be insolvent at the time of judgment and a sale of Feuz is imminent. The requested injunction will merely freeze the status quo and protect the damages remedy.

## ARGUMENT

Admiral is entitled to an injunction freezing the status quo and protecting its damages remedy because (1) Admiral has a reasonable likelihood of success on the merits of its claims against the Defendants; (ii) Admiral will suffer irreparable injury if an injunction is not granted; (iii) Admiral's injury and threatened harm outweighs any harm which granting injunctive relief would inflict on Defendants; and (iv) the public interest will not be adversely affected by the granting of the injunction. General Accident Ins. Co. Of America v. Bank of New England-West, N.A., 403 Mass. 473, 475 (1988); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980).

### I.    Admiral Has A Strong Likelihood Of Success On The Merits

Admiral has filed a six (6) count complaint with counts for breach of contract, quantum meruit, breach of a personal guarantee, reach and apply against General Electric Company, reach and apply against Empire Recycling Operations, Inc. and unfair and deceptive trade practices. Admiral has a strong likelihood of success on the 4 counts directed at the Defendants as is addressed below.

#### A.    Count For Breach Of Contract

Admiral seeks damages against Feuz Manufacturing, Inc. ("**Feuz**") for breach of contract arising out of Feuz's failure to pay for metal product shipped and delivered. "In every action of contract to make out his case, it is incumbent upon the plaintiff to prove (1) an agreement, expressed or implied, in writing or oral, (2) for a valid consideration, (3) performance or its equivalent by the plaintiff and breach by the defendant, and (4) damage to the plaintiff." Bishop, 17 Massachusetts Practice, §11, p. 10 (1997).

It is undisputed that Admiral and Feuz entered into an agreement whereby Feuz purchased 40,000 pounds of copper product from Admiral. Moreover, the copper product was shipped and delivered and there has been no complaints received with regard to the quality of the product in question and/or the agreed upon price charged. In sum, Admiral provided valuable copper product to Feuz for which payment has not been received.

Accordingly, Admiral has demonstrated that it is likely to succeed on its breach of contract claim.

### B.  Count For Quantum Meruit

Admiral also seeks damages against Feuz for Quantum Meruit arising out of Feuz's breach of the foregoing contract. "Quantum Meruit" means "as much as he deserves." Black's Law Dictionary 1119 (5th ed. 1979). Massachusetts Courts have consistently recognized the concept of quantum meruit and have awarded damages under that theory when proved by the Plaintiff. See; Cueroni v. Coburnville Garage, Inc., 135 Mass. 135, 52 N.E.2d 16, 18 (1943); C.C. & T. Constr. Co. v. Coleman Bros. Corp., 3 Mass.App.Ct. 371, 330 N.E.2d 216 (1975). Under the equitable doctrine of quantum meruit, a plaintiff is entitled to the reasonable value of his or her performance.

In the subject action, it is undisputed that Admiral provided 40,000 pounds of copper to Feuz for which no payment has been received. Because of the time value of money, Admiral is entitled to some amount greater than the outstanding amount due under a theory of quantum meruit. Additionally, it should be noted that an injured party may be entitled to both quantum meruit and breach of contract damages. Szalla v. Locke, 37 Mass.App.Ct. 346, 352, 639 N.E.2d 1096 (1994). Accordingly, Admiral has a reasonable likelihood of success on its count for quantum meruit as a matter of law.

C.     **Count For Breach of Guarantee**

Admiral also seeks damages against Defendant, Gary Feuz, arising out of Gary Feuz's breach of his personal guarantee dated August 15, 1995 ("**Guarantee**"). The terms of the Guarantee are clear and una mbiguous and it states, in pertinent part, that:

> "In consideration of credit being granted to me or to my agent(s), I agree to the following terms:
>
> 1. To pay invoices in full by the month following the month of purchase.
> 2. In the event of default of foregoing paragraph one (1) I agree to pay a service charge of 1.5% added on all balances past due. This service charge rate equals 18% per annum.
> 3. **If this account is placed for collection I agree to pay all reasonable charges including attorney's fees . . .**
> 4. **In the event of default of foregoing paragraph (3) I will personally guarantee the payment of all obligations of the above mentioned company.**"

Because Feuz has defaulted by not paying the outstanding amount due to Admiral in a timely manner, Gary Feuz is individually liable pursuant to the terms of the Guarantee and Admiral has a reasonable likelihood of success on its count for breach of guarantee as a matter of law.

D.     **Count For Unfair and Deceptive Trade Practices**

The basic liability standards of Chapter 93A are contained in §2(a), that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. c. 93A §2(a). Based upon M.G.L. c. 93A §2(a), Admiral must show (1) that the Defendants are engaged in trade or commerce, and (2) that their representations to Plaintiff were unfair and deceptive.

The Defendants are engaged in trade or commerce of manufacturing and supplying power system components.

Not only are the Defendants engaged in trade or commerce, but Defendants' representations

to the Plaintiff that they would use the product and be paid for their metal product was unfair and deceptive. "[A]n act or practice is deceptive if it possesses 'a tendency to deceive.'" Leardi v. Brown, 394 Mass 151, 156, 474 N.E.2d 1094, 1099 (1985), quoting Trans World Accounts, Inc. v. FTC, 594 F.2d 212, 214 (9th Cir.1979). What in fact happened was Feuz purchased the copper on credit and then rather than use the copper on a job or return the copper to Admiral, Feuz sold the metal product to Empire Recycling Operations, Inc. for somewhere in the vicinity of $50,000.00 and never paid Admiral for the product

Based upon the facts of this case, Admiral has a reasonable likelihood of success on the merits with regard to their Count under M.G.L. c. 93A.

## II. The Balance Of The Equities In This Case Cuts In Favor Of Granting Injunctive Relief

This Court must also balance the risk of irreparable harm to each party. As set forth above, Admiral has a strong likelihood of success on the merits of this case. Moreover, that injunctive relief should issue is equally apparent because the risk of harm to the Plaintiff far outweighs the risk of harm to Defendants.

Admiral will suffer irreparable harm if the injunction is denied. Upon information and belief, Feuz is insolvent and is in the process of selling its assets. Accordingly, Admiral believes that the Defendants will be unable to pay the judgment which Plaintiff will obtain in this action. To the extent that the Defendants are able to transfer, encumber or otherwise dispose of their assets, the amount which Admiral may recover will be reduced and Admiral will be deprived of its damage remedy at law. Courts have consistently recognized that this is the type of injury that warrants injunctive relief. See; Teradyne, Inc. v. Mostek, Inc., 797 F.2d 43, 52 (1st Cir. 1986); Fleet National Bank v. Rapid Processing Co., 643 F.Supp. 1065, 1066 (D. Mass. 1986); Boston Athletic Ass'n v.

Int'l Marathons, Inc., 392 Mass. 356,

In Teradyne, the plaintiff also sought a preliminary injunction restraining Defendants' transfer of assets. The plaintiff alleged that Defendants' freedom to dispose of its assets created a substantial risk of irreparable harm because Defendant was in the process of winding down and that it could at any time make itself judgment proof. In affirming the lower court's order granting the injunction, the First Circuit stated:

> The Supreme Court has held that a preliminary injunction, designed to freeze the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be insolvent at the time of judgment.

Id. at 52 (citing Deckert v. Independence Shares Corp., 311 U.S. (1940).

In the present case, the need for injunctive relief is just as compelling as it was in Teradyne because Feuz is apparently insolvent and is in the process of selling its business assets. Like the plaintiff in Teradyne, Defendants' freedom to dispose of its assets creates a substantial risk of irreparable harm to Admiral because the Defendants will be unable to pay the judgment that Admiral will receive in this action. A preliminary injunction is necessary to maintain the Defendants' status quo pending the award of damages by the court and the issuance of an execution to Admiral, and to prevent the dissipation and transfer of assets currently available to satisfy the judgment, otherwise Admiral shall suffer the immediate and irreparable loss of Feuz's available assets and will be unable to satisfy its ultimate judgment.

The Defendants, on the other hand, will not suffer irreparable harm if the injunction is granted. As the Defendant in Teradyne, it is unlikely that the Defendants will suffer any loss because the only effect of an injunction will be to temporarily freeze payments due to the Defendants and keep the Defendants' from dissipating their assets.

### III. THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

In a weak attempt to avoid the substantive merits of the case, the Defendants have asserted that Admiral's complaint against them should be dismissed because this court does not have personal jurisdiction. In Massachusetts, the exercise of personal jurisdiction over a foreign defendant is proper when (1) the terms of the Massachusetts long-arm statute, M.G.L. c. 223A Sec. 3 are met, and (2) the constitutional requirements of due process are satisfied. See; Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. at 5-6, 389 N.E.2d 76 (1979).

Under the Massachusetts Long Arm Statute, personal jurisdiction exists regarding any cause of action arising from a defendant:

> "(a) transacting any business in this commonwealth;......(c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....."

M.G.L. c. 223A Sec. 3.

The Defendants argue that because the Defendant is a New York Corporation operating in New York that personal jurisdiction cannot be exercised against it by the Courts of the Commonwealth Of Massachusetts. The Defendants overlook, however, that actual physical presence of a defendant in this jurisdiction is not required to acquire personal jurisdiction under the transacting business clause. See; Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. at 5-6, 389 N.E.2d 76 (1979). Tatro v. Manor Care, Inc. 416 Mass. 763, 768 (1994). In fact, courts have found personal jurisdiction in Massachusetts where the defendant was not physically present in Massachusetts and his only contact was by mail and telephone. "Widespread use of the telephone and mail has replaced

physical presence in negotiations." Haddad v. Tayler, 588 N.E.2d 1375, 32 Mass.App.Ct. 322 (1992). It should also be noted that courts have broadly construed the "transacting any business" clause of Sec. 3 of M.G.L. c. 223A. Tatro v. Manor Care, Inc. 416 Mass. 763, 767 (1994); Yankee Group, Inc. v. Yamashita, 678 F.Supp. 20 (1988).

In fact, this court **does** have jurisdiction under the long arm statute over the Defendants because: (1) Feuz Manufacturing, Inc. has transacted business in Massachusetts, and (2) Feuz has agreed in writing in a forum selection clause that "(a) the Laws of Massachusetts shall apply; (b) the appropriate forum to bring the action to enforce these Terms and Conditions is in Massachusetts; and (c) the buyer submits to the jurisdiction of the courts of Massachusetts."

### A. FEUZ HAS "TRANSACTED BUSINESS" IN MASSACHUSETTS

Feuz Manufacturing, Inc. ("**Feuz Corporation**") and Admiral have had a long term business relationship dating back to at least August 15, 1995. See; the personal guarantee of Gary Feuz attached to the Affidavit of David Schur previously submitted as Exhibit "C". This business relationship was quite substantial and was not limited to a few isolated transactions. In fact, from September of 1999 through August of 2004, Feuz Corporation purchased $1,179,344.00 in metal product from Admiral consisting of over 549,000.00 pounds of metal product. See; Exhibit "1" to the Affidavit of Stephen Goldy submitted herewith. In effectuating this business relationship, the Feuz Corporation has transacted business in Massachusetts by:

a. Contacting Admiral Metals in its Woburn Massachusetts office by telephone to request quotes for the purchase of metal product; A sample of a quote provided to Feuz Corporation in response to a telephone request is attached to the Affidavit of Stephen Goldy submitted herewith at Exhibit "2".

b. By faxing purchase orders to Admiral Metals office in Woburn Massachusetts; A sample of a faxed purchase order is attached to the Affidavit Of Stephen Goldy submitted herewith at Exhibit "3";

      c.      By engaging in negotiations with Admiral Metals via numerous e-mails sent to Admiral Metals in Woburn, Massachusetts; Copies of e-mails are attached to the Affidavit Of Stephen Goldy submitted herewith at Exhibit "4";

      d.      By purchasing product in Woburn, Massachusetts which was subsequently shipped from Woburn, Massachusetts to New York; A copy of invoices and delivery receipts are attached to the Affidavit Of David Schur previously submitted herewith at Exhibit "B";

      e.      By writing to Admiral Metals on numerous occasions and addressing said correspondence to Admiral Metals in Woburn, Massachusetts; A copy of said correspondence is attached to the Affidavit Of Stephen Goldy submitted herewith at Exhibit "5";

      f.      By contacting Admiral Metals via telephone in Woburn, Massachusetts to discuss the account;

Clearly, Feuz Manufacturing has "transacted business" in Massachusetts on a regular and substantial basis for approximately the last 10 years. Additionally, Gary Feuz transacted business in Massachusetts when he signed the personal guarantee dated August 15, 1995 which he received from Woburn, Massachusetts and which he returned to Admiral in Woburn, Massachusetts. Additionally, Gary Feuz has contacted Admiral in Massachusetts via the telephone during their ten year relationship to discuss business. Accordingly, jurisdiction in Massachusetts is proper.

**B.    FEUZ CONTRACTUALLY AGREED TO JURISDICTION IN MASSACHUSETTS**

The Terms and Conditions on the Delivery Receipt provides, in material part, that:

> "The product shipped by Admiral originates from Massachusetts; (a) the Laws of Massachusetts shall apply; (b) the appropriate forum to bring action to enforce these Terms and Conditions is in Massachusetts; and (c) the buyer submits to the jurisdiction of the courts in Massachusetts."

"Under Massachusetts law, "specific jurisdiciton" exists where litigation stems directly from defendant's forum-based contracts, while "general jurisdiction" exists where cause of action does

not directly stem from activities of defendant in forum state, but defendant had otherwise engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Steego Corp v. Ravenal, 830 F.Supp.42 (D.Mass 1993).

In sum, the the forum selection clause in the Terms and Conditions provides for specific jurisdiction in the Commonwealth of Massachusetts.

### IV.  FEUZ'S ALLEGED COUNTERCLAIM IS WITHOUT MERIT

In a desperate attempt to avoid payment of Admiral's debt, Feuz Corporation has asserted in negotiations that it is entitled to substantial offsets to the amount due because, on a different order in question, it alleges it was sold defective product by Admiral. In particular, (1) Feuz Corporation ordered 7 copper sheets from Admiral on June 19, 2003 (i.e. Feuz Corporation's P.O. #B1806), for overnight delivery, for the purchase price of $2,030.00 (i.e. Admiral's Invoice Number 1347934); and (2) Feuz Corporation ordered 3 copper sheets from Admiral on September 18, 2003 (i.e. Feuz Corporation's P.O. #B2337), for overnight delivery, for the purchase price of $870.00 (i.e. Admiral's Invoice Number 1367175). Invoice number 01347934 was paid in full by Feuz Corporation on June 23, 2003. Invoice 01367175 was paid in full by Feuz Corporation on September 19, 2003.

#### A.  THE PRODUCT IN QUESTION WAS CERTIFIED BY HUSSEY COPPER, LTD AND WAS NOT DEFECTIVE

The alleged defective product arises out of two unrelated transactions totaling a total purchase price of **$2,900.00** in which Admiral sold metal product to Feuz that was supplied to Admiral from Hussey Copper, LTD. Hussey Copper, LTD has certified the metal product in question and specifically stated that:

> "Hussey Copper, LTD certified that in all its manufacturing operations, no free Mercury came in contact with the above material.

> No electrical devices containing Mercury were damages to the point of contaminating the said material anywhere in its process. Hussey Copper, LTD testing equipment meets Mil-Std-45662. Material marking meets federal standard 185, when specified. We hereby certify the foregoing results correct and that the material complies with the above specifications."

Hussey Copper, LTD performed specific testing of the Chemical and Mechanical properties of the copper in question. <u>See</u>; the Material Certification attached to the Affidavit of Steven Goldy submitted herewith. In sum, the metal product was not defective.

### B. EVEN IF THE METAL PRODUCT WAS DEFECTIVE, WHICH IS DENIED, FEUZ'S CLAIM IS WITHOUT MERIT DUE TO THE TERMS <u>AND</u> <u>CONDITIONS</u>

The Uniform Commercial Code, as adopted in Massachusetts, provides that the <u>sale of goods, including metal products,</u> for a price of $500.00 or more is subject to the provisions of Article 2 of the Uniform Commercial Code. Article 2 provides a number of ways that Admiral, as a seller of metal product, can limit its exposure to its purchasers, including Feuz Corporation. Certain limiting terms are incorporated into the "Terms and Conditions" sheet which were attached to Admiral's delivery receipts and which were signed for by Feuz. For the reasons set forth below, Admiral limited its liability to Feuz pursuant to the Terms and Conditions sheet and Feuz's alleged counterclaim is without merit.

#### 1. FEUZ'S ALLEGED COUNTERCLAIM IS TIME BARRED

Article 2-725(1), as adopted in Massachusetts, provides, in material part, that:

> "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement **the parties may reduce the period of limitation to not less than one year** but may not extend it."

The Terms and Conditions Sheet does in fact limit the statute of limitations period to one year. Specifically, under the "Limitation of Liability" section of the Terms and Conditions it

provides, in material part, that:

> "No action regardless of form, arising out of the transactions under this agreement may be brought by the purchaser more than one year after the cause of action accrued."

As the delivery occurred more than one year ago, any claim by the Feuz Corporation is time barred.

2. **FEUZ'S CLAIM IS LIMITED BY THE WARRANTY**

Article 2-316(2), as adopted in Massachusetts, provides, in material part, that:

> "Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the fact hereof."

The Terms and Conditions provide under the Warranty, Warranty Limitations and Exclusions and Disclaimer of Unstated Warranties sections as follows:

> "**Warranty.** The warranty period is ninety (90) days and commences on the date of delivery. Admiral's warranty obligation is limited to providing remedial service during Admiral's normal business hours, and days during the warranty period and repairing or replacing at its option. Material which has been, during the warranty period, promptly reported by purchaser as defective in material or workmanship and is so found by Admiral upon inspection. Examination and repair or replacement of such material will be effected on location or at Admiral's facilities, at Admiral's option, with no charge to purchaser for service time expended. Material to be examined, replaced, or repaired must be returned to Admiral by purchaser within the warranty period, transportation charges prepaid. If the examined material is found not to be defective or is not for some other reason within the warranty coverage, Admiral's service time expended on or off- location will be charged to purchaser. purchaser shall be responsible for all maintenance service of the material, replacing expendable parts, making minor adjustments and performing operating checks.

>**Warranty Limitations and Exclusions**. Admiral will have not any further warranty obligation under this Agreement if the material is subject to abuse, misuse, negligence or accident or if purchaser fails to perform any of the duties set forth in this Agreement.
>
>**Disclaimer of Unstated Warranties.** The warranty printed above is the only warranty applicable to this purchase. All other warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose, and all warranties involving the time of delivery are disclaimed."

Pursuant to the terms of the "Terms and Conditions", Admiral's obligation is limited to repairing and replacing the alleged defective copper product. Admiral clearly would not be subject to the substantial offset alleged by the Defendants.

### 3. FEUZ'S REMEDY IS CONTRACTUALLY LIMITED TO THE PURCHASE PRICE OF $2,900.00

Article 2-719, as adopted in Massachusetts, provides, in material part, that:

>"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages
>(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
>(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sale remedy.
>(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provide in this chapter.
>(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

The Terms and Conditions provide under the Limitation of Liability Section as follows:

>"Limitation of Liability. It is understood and agreed that Admiral's liability whether in contract, in tort, under any warranty, in negligence or otherwise, shall not exceed the return of the amount of

> the purchase price paid by the purchaser for the subject material, and under no circumstances shall Admiral be liable for special, indirect, incidental, or consequential damages. The price stated for the material is a consideration in limiting Admiral's liability. No action, regardless of form, arising out of the transactions under this agreement may be brought by purchaser more than one year after the cause of action has accrued."

Even if the metal product was defective, which is denied, Admiral's liability is limited **pursuant to the Terms and Conditions to the "the return of the amount of the purchase price".**

## V. <u>CONCLUSION</u>

Based upon the foregoing, the Plaintiff's Motion For Injunction should be allowed because Admiral has a reasonable likelihood of success on the merits of the case and Admiral will suffer irreparable injury if an injunction is not granted because Feuz is likely to be insolvent at the time of judgment and a sale of Feuz is imminent. The requested injunction will merely freeze the status quo and protect the damages remedy. Additionally, the Defendants (1) have transacted business in the Commonwealth independently by soliciting business, negotiating the purchase of metal product, and receiving metal product from Massachusetts; (2) have agreed to jurisdiction in Massachusetts pursuant to the forum selection clause in the Terms and Conditions, (3) counterclaim is without merit as the alleged copper product is not defective as evidence by Hussey Copper, LTD's Material Certification, (4) counterclaim is without merit because even if the metal product was defective, which is denied, the Terms and Conditions provide that the statute of limitations has run, and (5) counterclaim is without merit because even if the metal product was defective, which is denied, the Terms and Conditions contractually limit Admiral's liability.

PLAINTIFF
By Its attorneys,

_____
Howard S. Goldman
BBO #199030
Goldman & Pease
160 Gould Street
Needham, MA 02494
(781) 292-1080