UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADMIRAL METALS SERVICENTER CO., INC., <br> Plaintiff, <br><br> v. <br><br> FEUZ MANUFACTURING, INC. and GARY A. FEUZ, individually, <br> Defendants, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY and EMPIRE RECYCLING OPERATIONS, INC., <br> Reach and Apply Defendants. | CIVIL ACTION <br> NO.:   04 12204 JLT |

**DEFENDANTS' PROVISIONAL OPPOSITION TO THE PLAINTIFF'S MOTION FOR INJUNCTION[1]**

The defendants, Gary Feuz and Feuz Manufacturing, Inc., hereby oppose the plaintiff's *Motion for Injunction*. As grounds, the defendants state as follows:

**I. THE PLAINTIFF WILL NOT SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED:**

The plaintiff cannot show that it will suffer irreparable injury because: (1) there are adequate resources, independent of the defendants' assets, from which any judgment

---

[1] The defendants have labeled this a "*Provisional Opposition*" on the grounds that Gary Feuz, the individual defendant and the principal of the corporate defendant, is currently out of the country and counsel has therefore been unable to prepare an adequate response to the plaintiff's *Motion*. The defendants have this day filed a *Motion to Postpone* the hearing on the plaintiff's *Motion* on these same grounds. By filing this *Provisional Opposition*, the defendants do not waive their rights to seek a postponement. They also do not waive their argument that counsel has been unable to prepare an adequate *Opposition*. This *Provisional Opposition* has been prepared on counsel's best efforts, without the benefit of consultation with the defendants, and is made subject to the limitations brought about by this circumstance. This *Provisional Opposition* is being filed with the acknowledgment that counsel has been unable to consult with the defendants and that additional arguments as well as additional support for the arguments stated herein may have been provided had counsel been able to consult with the defendants. The defendants therefore reserve the right to file a supplement to this *Opposition* after having the opportunity to consult with the defendants.

in its favor may be recovered; and (2) the sale of the defendants' assets is not "imminent."

    **A.**    <u>**There Are Adequate Resources From Which The Plaintiff May Satisfy a Judgment In Its Favor**</u>**:**

According to its *Complaint*, the plaintiffs claim damages in the amount of approximately $71,000.00. Empire Recyling Operations, Inc. ("Empire"), one of the reach and apply defendants in this case, is currently holding $50,000.00 it owes to the defendants. See *Affidavit of Michael B. Flynn*, attached as Exhibit "A." Empire has agreed not to transfer or distribute this money in the absence of an appropriate court order or directions provided by agreement of both parties. <u>Id</u>. Empire's position in this regard has been acknowledged by plaintiff's counsel. <u>Id</u>.

An additional $15,000.00 has been offered by Hussey Copper, LTD.[2] This has been communicated to both defendants' and plaintiff's counsel. <u>Id</u>. Thus, there is a total of $65,000.00 (only $6,000.00 less than the plaintiff's stated damages), from resources independent of the defendants' assets, available to satisfy any judgment in favor of the plaintiff.

    **B.**    <u>**The Plaintiff's Recovery Will Be Offset By the Amount of the Defendant's Counterclaim**</u>**:**

The Court must also take into account the defendants' *Counterclaim*. The *Counterclaim* alleges that the plaintiff owes the defendants approximately $41,000.00. The *Counterclaim* is as reasonably likely to succeed as the plaintiff's *Complaint* – the plaintiff provided the defendants with copper which was defective, breached the expressed and implied warranties given by the plaintiff and caused the defendants to

---

[2]Hussey supplied to the plaintiff the defective copper which is the subject of the defendants' *Counterclaim*.

suffer significant incidental and consequential damages. If their *Counterclaim* is successful, the defendants will be able to (at least) set-off $41,000.00 against any judgment in favor of the plaintiff. Thus, the total exposure to the plaintiff will be reduced to $30,000.00, an amount which is well within the $65,000.00 which both parties have fully acknowledged is currently available.

The plaintiff has argued, in the *Memorandum in Support of Plaintiff's Motion for Injunction* ("*Memorandum*"), that it has disclaimed the warranties which are the subject of, and otherwise limited the remedies sought by, the defendants' *Counterclaim*.[3] However, these arguments ignore the clear law pertaining to warranty disclaimers and remedy limitations under the *Uniform Commercial Code* ("UCC").

The plaintiff attempted to make these disclaimers on the reverse side page of a delivery receipt (something the plaintiff calls its "Terms and Conditions") it sent to the defendant along with the shipments of copper in question. See *Memorandum*, p. 7-8, 11-14; see also *Affidavit of Steven Goldy in Support of Plaintiff's Motion for Injunction*, p. 3-4, exhs. 2, 5-7. There apparently was no pre-delivery negotiation of (or even the slightest mention of) the alleged "Terms and Conditions" and the defendants were apparently not even aware that they existed. Id. Although the plaintiff has submitted to the Court a number of letters, purchase orders, emails, confirmations and other correspondence between the parties, none so much as mentions the alleged "Terms and Conditions." Id. Moreover, neither the plaintiff's *Sales Quotes* nor the delivery receipts for the shipments in question (the front pages) makes any reference to the alleged "Terms and Conditions." Id. at exhs. 2, 6, 7.

---

[3] Specifically, the plaintiff claims its "Terms and Conditions" reduced the statute of limitations to one year and limited the damages to the replacement and/or refund price of the copper in question.

Although parties are free to exclude or modify warranties, any such exclusion or modification must be "conspicuous." M.G.L. ch. 106, § 2-316. However, "disclaimers…are not favored and are limited whenever possible." Singer Co. v. E.I. du Pont de Nemours & Co., 579 F. 2d 433, 438 (8th Cir. 1978). A disclaimer is not "conspicuous," and is therefore not effective, when it is printed on the back of a purchase order, and the front page does not contain any words or notice sufficient to call attention to the "Terms and Conditions" printed on the back page. Hunt v. Perkins Machinery Co., Inc., 352 Mass. 535, 226 N.E. 2d 228 (1967). In these circumstances, the disclaimer is disregarded and the UCC's warranty provisions apply. Id; see also Cooley v. Salopian Industries, LTD., 383 F. Supp. 1114 (D.S.C. 1974); Rite Fabrics, Inc. v. Stafford-Higgins Co., Inc., 366 F. Supp. 1 (S.D.N.Y. 1973); Greenspun v. American Adhesives, Inc., 320 F. Supp. 442 (E.D. Pa. 1970). Unless disclaimers are disclosed prior to the making of the agreement and agreed upon, they are not binding. Van Den Broeke v. Bellanca Aircraft Corp., 576 F. 2d 582 (5th Cir. 1978).

The plaintiff's alleged disclaimers appeared on the back of a delivery receipt. They were neither disclosed at the time of contracting nor were they brought to the defendant's attention on the face of the delivery receipt. Given these facts, the disclaimers are ineffective.

In addition, parties cannot limit available remedies where the limitation causes the remedy to "fail of its essential purpose." M.G.L. ch. 106, § 2-719(2). Under the UCC, no contract may deprive the parties of minimum adequate remedies. AES Technology Systems v. Coherent Radiation, 583 F.2d 933 (7th Cir. 1978). Damage limitations are not effective when unconscionable. M.G.L. ch. 106, § 2-719(3); see also, Omni Flying Club,

4

Inc. v. Cessna Aircraft Co., 366 Mass. 154 (1974).  Such a finding is particularly appropriate in cases where a clause limiting damages to replacement cost or refund of the purchase price amounts to a remedy far below "a bare minimum in quantum," because of the buyer's reliance on the seller's product as either a component part of a larger manufacturing process or an integral component of a larger project, the success of which is reliant on the product, and the defect in the product is latent.  See., e.g., Potler v. MCP Facilities Corp., 471 F.Supp. 1344 (E.D.N.Y. 1979); Majors v. Kalo Laboratories, Inc., 407 F. Supp. 20 (M.D. Ala. 1975); Neville v. Union Carbide Corp., 294 F. Supp. 649 (W.D. Pa. 1968).

Here, the plaintiff attempted (in its "Terms and Conditions") to limit both the statute of limitations (to one year) and its potential damages (replacement cost or refund).  However, the limiting language is neither conspicuous nor bargained for, the defect in the copper was latent and the defendants used the copper to produce a product which the plaintiff knew was to be used by the defendants' customer as a component part in the production of a turbine engine.  Under these circumstances, the limited remedy was unconscionable and "failed of its essential purpose."  The language is therefore ineffective, and the standard UCC provisions allowing for the recovery of incidental and consequential damages govern.  See M.G.L. ch. 106, § 2-715.

    **C.**    **The Sale of the Corporate Defendant Is Not Imminent:**

Although the defendants acknowledge that Feuz Manufacturing, Inc.'s assets are in the process of being sold, the potential sale is not imminent.  No sale will take place any earlier than November 30, 2004.  Exh. A.  The defendants' counsel has communicated this to plaintiff's counsel.  Id.

**II.   THE HARM WHICH WILL BE DONE TO THE DEFENDANTS IF THIS INJUNCTION IS ALLOWED FAR OUTWEIGHS ANY THREATENED HARM TO THE PLAINTIFF:**

As discussed *supra*, there are adequate resources available to the plaintiff without restraining the either the defendants' assets or the monies owed to them by the reach and apply defendant General Electric Company ("GE"). Restraining GE would provide the plaintiff with, at best, minimal additional security.

On the other hand, restraining GE would have grave consequences for the defendants. The defendants are currently attempting to wind up their affairs by, *inter alia*, negotiating settlements with and making payments to creditors (such as the plaintiff). The primary source of the cash which is available to do so is being provided through the collection of accounts receivable with GE. Restraining GE from making payments to the defendants would effectively eliminate their ability to pay creditors and to otherwise wind up its affairs. This harm greatly outweighs the risk that the plaintiff may lose out on the chance to recover $6,000.00 over and above the amount now known to be available.

**III.   CONCLUSION:**

WHEREFORE, for all of the above-stated reasons, the plaintiff's *Motion for Injunction* should be DENIED.

## **REQUEST FOR A HEARING**

The defendants respectfully request a hearing on the plaintiff's *Motion* and the defendants' *Opposition* as oral argument may assist the Court in determining the issues presented herein.

                        Respectfully submitted,
                        FEUZ MANUFACTURING, INC. and
                        GARY A. FEUZ,
                        by their attorneys,

                        /s/ Michael B. Flynn
                        Michael B. Flynn      BBO #559023
                        Richard A. Davidson, Jr.  BBO #552988
                        FLYNN & ASSOCIATES, P.C.
                        400 Crown Colony Drive, Suite 200
                        Quincy, MA 02169
                        (617) 773-5500

DATE:  November 8, 2004
G:\F & A\CASE FILES\Feuz Manufacturing\pleadings\oppn.doc