UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADMIRAL METALS SERVICENTER CO., INC.,<br>Plaintiff,<br><br>            v.<br><br>FEUZ MANUFACTURING, INC. and<br>GARY A. FEUZ, individually,<br>            Defendants,<br><br>            v.<br><br>GENERAL ELECTRIC COMPANY and<br>EMPIRE RECYCLING OPERATIONS, INC.,<br>            Reach and Apply Defendants. | CIVIL ACTION<br>NO.:   04 12204 JLT |

**DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR INJUNCTION**

The defendants, Gary Feuz and Feuz Manufacturing, Inc., hereby oppose the plaintiff's *Motion for Injunction*. As grounds, the defendants state as follows:

**I.   THE PLAINTIFF WILL NOT SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED:**

The plaintiff cannot show that it will suffer irreparable injury because: (1) there are adequate resources, independent of the defendants' assets, from which any judgment in its favor may be recovered; and (2) the sale of the defendants' assets is not "imminent."

**A.   There Are Adequate Resources From Which The Plaintiff May Satisfy a Judgment In Its Favor:**

According to its *Complaint*, the plaintiffs claim damages in the amount of approximately $71,000.00. Empire Recyling Operations, Inc. ("Empire"), one of the

reach and apply defendants in this case, is currently holding $58,840.60 it owes to the defendants. See *Affidavit of Daniel S. Cohen*, attached as Exhibit "A;" *Affidavit of Gary Feuz*, attached as Exhibit "B." Empire has agreed not to transfer or distribute this money pending the resolution of this lawsuit. Exh. A. Empire is also willing to place the money it owes to Feuz in an escrow account pending the resolution of this lawsuit. Id.

An additional $15,000.00 has been offered by Hussey Copper, LTD.[1] See *Affidavit of Tom Funkhouser*, attached as Exhibit "C." This has been communicated to both defendants' and plaintiff's counsel. Id. Thus, there is a total of $73,840.60, from resources independent of the defendants' assets, available to satisfy any judgment in favor of the plaintiff. This is more than enough security for the plaintiff and the relief sought by its motion is therefore unnecessary and superfluous.

      **B.**     **The Plaintiff's Recovery Will Be Offset By the Amount of the Defendant's Counterclaim:**

The Court must also take into account the defendants' *Counterclaim*. The *Counterclaim* alleges that the plaintiff owes the defendants approximately $41,000.00. The *Counterclaim* is as reasonably likely to succeed as the plaintiff's *Complaint* – the plaintiff provided the defendants with copper which was defective, breached the expressed and implied warranties given by the plaintiff and caused the defendants to suffer significant incidental and consequential damages. If their *Counterclaim* is successful, the defendants will be able to set-off (at least) $41,000.00 against any judgment in favor of the plaintiff. Thus, the total exposure to the plaintiff will be reduced to $30,000.00, an amount which is well within the $73,840.60 which is currently available.

---

[1] Hussey supplied to the plaintiff the defective copper which is the subject of the defendants' *Counterclaim*.

The plaintiff has argued, in the *Memorandum in Support of Plaintiff's Motion for Injunction* ("*Memorandum*"), that it has disclaimed the warranties which are the subject of, and otherwise limited the remedies sought by, the defendants' *Counterclaim*.[2] However, these arguments ignore the clear law pertaining to warranty disclaimers and remedy limitations under the *Uniform Commercial Code* ("UCC").

The plaintiff attempted to make these disclaimers on the reverse side page of a delivery receipt (something the plaintiff calls its "Terms and Conditions") it sent to the defendant along with the shipments of copper in question.  See *Memorandum*, p. 7-8, 11-14; see also *Affidavit of Steven Goldy in Support of Plaintiff's Motion for Injunction*, p. 3-4, exhs. 2, 5-7.   There was no pre-delivery negotiation of (or even the slightest mention of) the alleged "Terms and Conditions" and the defendants were not even aware that they existed at any time prior to this litigation.  See Exh. B.  Feuz' purchase orders do not mention the terms and conditions.  Id.  Although the plaintiff has submitted to the Court a number of letters, purchase orders, emails, confirmations and other correspondence between the parties, none so much as mentions the alleged "Terms and Conditions."   See *Memorandum*, p. 7-8, 11-14; see also *Affidavit of Steven Goldy in Support of Plaintiff's Motion for Injunction*, p. 3-4, exhs. 2, 5-7.  Neither the plaintiff's *Sales Quotes* nor the delivery receipts for the shipments in question (the front pages) makes any reference to the alleged "Terms and Conditions."  Id. at exhs. 2, 6, 7.  The delivery receipts were signed by Feuz's shipping clerk, who had neither authority nor apparent authority to negotiate contractual terms or bind Feuz to the terms and conditions.  Exh. B.

---

[2] Specifically, the plaintiff claims its "Terms and Conditions" reduced the statute of limitations to one year and limited the damages to the replacement and/or refund price of the copper in question.

Although parties are free to exclude or modify warranties, any such exclusion or modification must be "conspicuous." M.G.L. ch. 106, § 2-316.  However, "disclaimers…are not favored and are limited whenever possible." Singer Co. v. E.I. du Pont de Nemours & Co., 579 F. 2d 433, 438 (8th Cir. 1978).   A disclaimer is not "conspicuous," and is therefore not effective, when it is printed on the back of a purchase order, and the front page does not contain any words or notice sufficient to call attention to the "Terms and Conditions" printed on the back page.  Hunt v. Perkins Machinery Co., Inc., 352 Mass. 535, 226 N.E. 2d 228 (1967).  In these circumstances, the disclaimer is disregarded and the UCC's warranty provisions apply.  Id; see also Cooley v. Salopian Industries, LTD., 383 F. Supp. 1114 (D.S.C. 1974); Rite Fabrics, Inc. v. Stafford-Higgins Co., Inc., 366 F. Supp. 1 (S.D.N.Y. 1973); Greenspun v. American Adhesives, Inc., 320 F. Supp. 442 (E.D. Pa. 1970).  Unless disclaimers are disclosed prior to the making of the agreement and agreed upon, they are not binding.  Van Den Broeke v. Bellanca Aircraft Corp., 576 F. 2d 582 (5th Cir. 1978).

The plaintiff's  alleged disclaimers appeared on the back of a delivery receipt.  They were neither disclosed at the time of contracting nor were they brought to the defendant's attention on the face of the delivery receipt.  Given these facts, the disclaimers are ineffective.

In addition, parties cannot limit available remedies where the limitation causes the remedy to "fail of its essential purpose."  M.G.L. ch. 106, § 2-719(2).  Under the UCC, no contract may deprive the parties of minimum adequate remedies.  AES Technology Systems v. Coherent Radiation, 583 F.2d 933 (7th Cir. 1978).  Damage limitations are not effective when unconscionable.  M.G.L. ch. 106, § 2-719(3); see also, Omni Flying Club,

Inc. v. Cessna Aircraft Co., 366 Mass. 154 (1974).  Such a finding is particularly appropriate in cases where a clause limiting damages to replacement cost or refund of the purchase price amounts to a remedy far below "a bare minimum in quantum," because of the buyer's reliance on the seller's product as either a component part of a larger manufacturing process or an integral component of a larger project, the success of which is reliant on the product, and the defect in the product is latent.  See., e.g., Potler v. MCP Facilities Corp., 471 F.Supp. 1344 (E.D.N.Y. 1979); Majors v. Kalo Laboratories, Inc., 407 F. Supp. 20 (M.D. Ala. 1975); Neville v. Union Carbide Corp., 294 F. Supp. 649 (W.D. Pa. 1968).

Here, the plaintiff attempted (in its "Terms and Conditions") to limit both the statute of limitations (to one year) and its potential damages (replacement cost or refund).  However, the limiting language is neither conspicuous nor bargained for, the defect in the copper was latent and Feuz used the copper to produce a product which Admiral knew was to be used by the Feuz's customer as a component part in the production of a turbine engine.  Exh. B.   Admiral knew the particular purpose for which its copper would be used and also knew the importance of certifying its suitability for this purpose.  Id.  Under these circumstances, the limited remedy was unconscionable and "failed of its essential purpose."  The language is therefore ineffective, and the standard UCC provisions allowing for the recovery of incidental and consequential damages govern.  See M.G.L. ch. 106, § 2-715.

## II. **THE HARM WHICH WILL BE DONE TO THE DEFENDANTS IF THIS INJUNCTION IS ALLOWED FAR OUTWEIGHS ANY THREATENED HARM TO THE PLAINTIFF**:

As discussed *supra*, there are adequate resources available to the plaintiff without restraining the either the defendants' assets or the monies owed to them by the reach and apply defendant General Electric Company ("GE"). Restraining GE would provide the plaintiff with, at best, minimal additional security.

On the other hand, restraining GE would have grave consequences for the defendants. The defendants are currently attempting to wind up their affairs by, *inter alia*, negotiating settlements with and making payments to creditors (such as the plaintiff). The primary source of the cash which is available to do so is being provided through the collection of accounts receivable with GE. Restraining GE from making payments to the defendants would effectively eliminate their ability to pay creditors and to otherwise wind up its affairs. This harm greatly outweighs the risk that the plaintiff may lose out on the chance to recover from Feuz's assets, especially since there are more than enough other resources from which the plaintiff may satisfy any recovery.

## III. **CONCLUSION**:

WHEREFORE, for all of the above-stated reasons, the plaintiff's *Motion for Injunction* should be DENIED.

## **REQUEST FOR A HEARING**

The defendants respectfully request a hearing on the plaintiff's *Motion* and the defendants' *Opposition* as oral argument may assist the Court in determining the issues presented herein.

                                                Respectfully submitted,
FEUZ MANUFACTURING, INC. and
GARY A. FEUZ,
by their attorneys,

/s/ Michael B. Flynn
Michael B. Flynn        BBO #559023
Richard A. Davidson, Jr.   BBO #552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

DATE:  November 19, 2004
\\SERVER1\Data\F & A\CASE FILES\Feuz Manufacturing\pleadings\oppn2.doc